Harper, J.
It is said that there are three methods of acquiring the private right of way, by necessity, by express grant, and by an uninterrupted enjoyment of twenty years, from which a grant is presumed. The first method is not in question in this case; nor even in a looser sense than any in which the term has been used, can it be said that any necessity exists. The plaintiff has another way to the market road, which is said to be nearer and better than the one in question. Nor is there any pretence of a grant, unless it be meant that by purchasing land over which a private way ran, and which the plaintiff was then in the habit of using, a reservation or grant of the right must be inferred. But this is without the slightest foundation. There can he no such reservation or grant, unless expressly made, or presumed from the twenty years enjoyment.
We agree with the presiding judge, that it was necessary for the plaintiff to prove not only that the way was more than twenty years old, but that he, or those under whom he claimed, had used it for twenty years. Others might have the private right of way by this road, but this does not concern him, unless he can make out the right in himself. In the case of Smith v. Kinard,* the plaintiff, and those under whom he *643 claimed, had enjoyed the way for more than forty years. It is true that in that case there was a modification of the doctrine laid down in M’Kee v. Garrett, and it was held that the right of way may be acquired by use over unenclosed woodland ; that is to say, by constant and notorious use, but not by that which is casual and interrupted, such as passing over the land for the purpose of hunting. According to the report, the plaintiff’s vendor, Gregory, lived at the place ten or twelve years, and the plaintiff himself, since his purchase, four or five years, and there is no further proof. This amounts to no more than an enjoyment of from fourteen to seventeen years, which is too short to establish the right of way.
Dawkins, for the motion.
Herndon, contra.
The motion is therefore dismissed.
JonNsoN and O’Neall, Js. concurred.

 Daniel Smith v. John M. Kinard.
Away must be erivatePUthefór Se™ aion^faÑs under the jjmbiic fatter is kept in ieoted at tho”wfií of those who use im^ra habitants to keep or not to keep a furnishes ’aS and certain rule 10 determine UcorprivafaCoj
Twenty years use of'a wavBby those who 'oocn-pied a particular ri«ht’ byVepro* scripiion, which asPPa°ppurteua"t to the promises.
(a) See The State v. Gregg, ante 387.
*643 Whore the Sppurtenant'y “ his premises, the rcody in issue,— mero Mse ““d dence of his ti-
wav may bf acquired hy constant and u°Mndosed woodlands,
¡jOTÍJ'll1|rq“adtli'1 whit way aright of way may arise ^“pe^uon'or ihv, considered.
*642 Action on the case for obstructing a way, tried before Mr. Justice Newberry, Spring’ Term, 1830. Verdict for the plaintiff. On motion for a nonsuit or new trial, before this Court, at Columbia, December Term, 1830,—
Johnson, J. delivered the opinion of the Court,
The plaintiff was in the use and enjoyment of a way from his residence in the country, passing-over unenclosed woodlands belonging t*ie defendant, to a public highway called the Charleston road, This way was obstructed by the defendant* and this is an action oil the case to recover damages fimthe supposed injury. Some of the counts in the plaintiff’s declaration describe the way in question as a public way, and claim^^nages on account of the special injury sustained by the obstruct^* and others describe it as a private way; and the plaintiff preswroes for it as appurtenant to the premises whereon he resides, and of which he claims to be seized in fee. The 9uesti°ns which arise out of this state of the case are: 1. Whether this was a public or a private way 1 2. If a private way, whether it was appurtenant to the premises whereon the plaintiff resided! 3. Whether the plaintiff had such an estate in the premises as enti-tied him to prescribe for it from necessity, or as appurtenant thereto ? Whether a way through unenclosed lands may be prescribed for! The evidence out of which these questions arise, substantially is:— *643 That about the year 1780, (now fifty years past,) the land now in possession of and claimed by the plaintiff, was settled by one Appleton, who pretended to claim under a purchase from some one now unknown, and built a house and cleared lands. About the time he settled the place, he opened the road in question, and continued to use it until he abandoned the place, (a period of about twenty years) ; and all who have succeeded him in the possession, have continued the use of the way, down to the time of its obstruction by the defendant. In process of time this road was continued beyond his house, and across a public road called the “ Black-jack road,” to a church erect. ed there, and was used by all persons of the neighbourhood having occasion to pass and repass that way. It does not appear that Appleton had any other right than a naked possession, or who succeeded him in the possession, or at what precise time, but it is inferrable from all the circumstances, that this possession was never afterwards vacant for any considerable length of time. The land claimed by the plaintiff, and now in his possession, was origipally granted to Jacob Hoffman, in 1758, who in 1788 conveyed to Rezin Ragan. In 1808 he conveyed to Reuben Morgan, and Morgan to the plaintiff in 1822, and from that time he continued the use of the road down to the time of its obstruction, a short time before the bringing of this action. The continuation of this road into the Black jack road had been long before shut up and obstructed, by whom it does not appear ; so that this was the only way open to the plaintiff to any public road. The commissioners of roads had never caused this road to be worked on or kept in repair as a public road, nor w.as there any other recognition of it as such by any legal authority.
1. The English writers all agree that any way common to all the citizens, whether it lead directly to a market town, or from town to town, or from village to village, although it does not stop there, but leads to other towns, may be regarded as a public highway; but that a way to a parish church, or the common fields of the town, or to a private house, or perhaps to a village, which terminates there, and is *644 for the particular benefit of such house, parish, church, or village only, may be called a private way, but not a highway; Haw. P. C. book 1, eh. 76, sec. 1; Co. Lit. 56, a; Bac. Abr. Highways, A: and what is a private and what a public way, it seems may depend on common reputation. In England, every parish is bound of common right, says Judge Blackstone, to keep their highroads in repair, unless by reason of the tenure of lands, or otherwise, that duty is consigned to some particular person. 1 Black. Com. 376. And it is apparent that the definition of a highway, and the distinction between that and a private way, is given as well with reference to the liability to repair, as to the rights and privileges which grew out of them ; and, although 1 have not been able to find any direct authority for it, I incline to the opinion that the liability of the inhabitants to keep or not to keep a road in repair, furnishes a certain and safe rule to determine whether it is public or private. A way must be either public or private; the former alone falls under the public care, and the latter is kept in repair or neglected, at the will of those who use it. The care of the public roads in this State is confided to the commissioners of roads, who, by the act of 1788, (P. L. 444) are authorised, at the equal labor and charge of the inhabitants, amongst other things, to keep in repair such public roads as are established by law, or as they shall judge necessary, in their respective parishes and districts ; and notwithstanding the Court of Sessions, exercising a general superintendence over all public subordinate functionaries, might control the commissioners in the capricious exercise of this discretion, in keeping up a useless road, or abandoning one of great public convenience, I apprehend that with respect to all the roads except those laid out by law, it belongs to them in the first instance to determine which are not public ways, and that all not recognized by them as public must be regarded as private, for we know of but the two classes. There may be exceptions to the rule, but none have presented themselves to my mind in the course of this investigation, According to this rule, the road in question is a private and not a public road, and the same conclusion follows from Blackstone’s defi. nition. The plaintiff’s house is one of the termini; the public highway, the Charleston road, is the other, which opens for him access to a market, to church, and to the discharge of all his public duties as a citizen. Nor does the use of it by others with his consent, or by his acquiescence or without it, change its character; to them it may be a convenience, to him it is indispensible.
2. If all the inhabitants of a hamlet, or all the owners and occupiers of a particular farm, have immemorially used to cross such a ground for such a particular purpose, this immemorial usage supposes an original grant, whereby a right of way thus appurtenant to the land or houses, may, says Blackstone, be clearly created and prescribed for. 2 Black. Com. 36. Twenty years of uninterrupted use and occupation of land, is, according, to the established rule of the Court, sufficient to authorize the presumption of a grant. The principle equally applies to the right of way, for that also lies in grant. The way in question was used by Appleton for twenty years. His successors then, including the plaintiff, have continued to use it ever since, an additional period of thirty years, which, according to the principle, furnishes abundant presumption of a grant, as appurtenant to the plaintiff’s premises.
*645 3. The third proposition contains more of form than substance. It assumes that there was no evidence that the fee in the premises was in the plaintiff, and that therefore he could not prescribe for a right of way, but it is not true that even a tenant for years or at will may not prescribe. He cannot, it is true, claim by prescription for himself, on account of the incongruity of immemorial usage and the necessary duration of his estate; but he may have the benefit of a prescription in his landlord, the tenant of the fee, by laying it in him. According to the judge’s report, however, the proof that the fee of the premises was in the plaintiff was fully made out, by a regular chain of title from the original grantee, and although strict proof of the execution of the several deeds was not given, that was dispensed with by the acquiescence of the opposite party. Independently of this, I incline to think there was sufficient proof of title in the plaintiff. He was in the actual use and occupation. Common reputation gave him the right, and except where from the nature of the proceedings the title is directly put in issue, this is sufficient evidence of title ; as in trespass quare clausum, fregit, and such like cases.
4. A dictum, in the case of M’Kee v. Garrett,* decided December Term, 1829, and which seems to have received the sanction of this Court, by its concurrence in the opinion of the presiding judge, is relied on as authority that a way cannot be prescribed for, through unenclosed woodlands. That case, as well as I remember, was decided without argument, and I am the more confident that this part of it did not receive the attention due to it, particularly from myself, or I should never have concurred in it. A way through woodlands unenclosed, in a country of which much the greater part is forest, is equally necessary as thro’ enclosed lands in a country generally cultivated. They are equally the subjects of grant, and from the ordinary marks made by use alone, are equally capable of identity, and is there any one reason why they should not be the subjects of prescription 1 The argument is that, according to M’Connico v. Singleton, 2 Con. Rep. 244, trespass will not lie for passing over unenclosed woodland ; that the owner cannot therefore restrain a stranger from using a way over such lands, and thus hfe would be entitled to a right of way without his consent, when he could lawfully obtain it only by grant. This is a perversion of that case; there the trespass complained of was riding over the plaintiff’s woodlands in pursuit of game, where the defendant left no trace that would remain visible for a week, and no positive injury was done, and the most common observer will be struck with the distinction in the two cases. The continued use of a way, particularly with carriages of burthen, leaves an impression not to be mistaken, not only as indicating an adverse use with its identity, but essentially injuring the soil over which it passes, and on these accounts is the fit subject of a suit. I am decidedly of the opinion, therefore, that this position cannot be maintained on principle, and I lay hold of this case to declare my dissent to the authority of M’Kee v. Garrett, as to this question. The counsel for the plaintiff have also placed his rights to the way in question as arising from necesssity by operation of law; and I am much inclined to think he was entitled to recover on that ground also, notwithstanding the dictum thrown out, in Turnbull v. Rivers, 3 M’Cord, 139, that the right is limited to the case where one sells *646 lands which are surrounded by other lands belonging' to himself’. That rule is founded upon the legal implication that every grant carries with it all the rights necessary to the enjoyment of the thing granted, and if we follow out the principle, it leads, I think, to the conclusion, that in every grant there is an implied reservation of the right to use what is not granted, unless it is expressly provided for. Thus, reversing the case before supposed, one owning lands reserves the centre of the tract to himself, and sells all the surrounding lands to another, without stipulating for or against the right of way. Now it cannot be supposed that he intended to preclude himself from access to the reserved lands, and the purchaser knowing this state of things, if he neglect to stipulate against it may reasonably be supposed to have assented. This position is, I think, fully sustained by the argument in Howton & Frearson, 8 T. R. 55, although Lord Kenyon does not give it his decided approbation. It proceeds on the ground that public policy requires that none of the lands should be shut out from cultivation and use, and countervails the rule construing grants most strongly against the grantor. It applies even more strongly to grants by the State, than by individuals. The object of granting lands was to facilitate the population and cultivation of the country, and the whole course of our policy from the first settlement of the country to the present day, has been intended to promote it; indeed for many years the vacant lands have been given as a bounty, except the mere expenses of the public offices in obtaining grants; every one who obtained grants, did it with a knowledge that the vacant lands were to be granted, and that access to them was necessary to their use. The whole country have acquiesced in according the right of way through wood lands to the public roads, and instances of any controversy about them are very rare, insomuch that I have no recollection of a right, such as the plaintiff claimed, having been called in question; for the claims of defendapt would shut him out from all communication with the public, unless he is indebted to the kindness of some other neighbor for such a privilege. The general tendency of our own decisions have, in my judgement, tended rather too strongly to circumscribe the right of way from necessity, and although upon reflection I am satisfied that I carried it too far on the circuit, in Seabrook & King, 1 N. & M’C. 140, it will be worth the consideration of the Court to watch its tendency to the opposite extreme. Dismissing from the case itself every other consideration than that the plaintiff is the owner of the land, and has been in possession of it and the use of this road since 1822, and has no other to any public road, what is his. situation if the defendant may shut him out 1 He has no higher claims upon any one else. The use shews its convenience to him, and it does not appear that he can have another road with less inconvenience to any one else than the defendant, — he must go in that way or he is lost to society, and unable to discharge the duties which he-owes to himself, his family and his country. The law does not deal so harshly with the citizen. These general views embrace all the grounds taken for a nonsuit and new trial, which, according to the report of the presiding judge, enter into the case.
*645 1 Bail. 311.
*646 All the motions are therefore dismissed.
Johnston, for the motion.
Caldwell, contra.